YU LESEBERG, P.C.
ROBERT E. ALLEN (SBN 166589)
robert@ipcounsel.me
HELEN YU (SBN 177222)
helenyu@hyulaw.com

1645 N. Vine, Penthouse 1002
Los Angeles, California 90028
Telephone: 310-286-7667
Facsimile: 323-871-4156

Attorneys for Plaintiffs
HOLIDAY LEGACY IP, LLC,
DEBORAH HOLIDAY,
HARMONY HOLIDAY and
SARA HOLIDAY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| HOLIDAY LEGACY IP, LLC, a California limited liability company; DEBORAH HOLIDAY, an individual; HARMONY HOLIDAY, an individual; and SARA HOLIDAY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE CLEVELAND, an individual and as the personal representative of THE ESTATE OF ELIZABETH HOLIDAY; JEFFREY WOESTE, an individual; and DOES 1 through 10,<br><br>Defendants. | Case No. CV-14-837 CBM (ASx)<br><br>Hon. Consuelo B. Marshall<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   November 18, 2014<br>Time:  10:00am<br>Place:  Courtroom 2<br>         312 North Spring Street<br>         Los Angeles, CA 90012<br><br>Complaint Filed:   February 3, 2014<br>FAC Filed:         March 10, 2014<br>SAC Filed:         August 28, 2014 |

1

# TABLE OF CONTENTS

2  MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

3  I.  INTRODUCTION ................................................................................................ 1

4  II.  LEGAL STANDARD FOR A MOTION ON THE PLEADINGS .................... 3

5  III.  STATEMENT OF RELEVANT FACTS ............................................................ 4

6  IV.  ARGUMENT ........................................................................................................ 5

7  A.  THE HOLIDAY PARTIES EXCLUSIVELY OWN THE
    RENEWAL TERM ........................................................................................ 5

8  1.  The Renewal Term Copyright .......................................................... 5

9  2.  The Renewal Term Never Vested In Jimmy Holiday .................... 6

10 B.  THE STATUTE OF LIMITATIONS DOES NOT BAR THE
11    HOLIDAY PARTIES' CLAIM TO OWNERSHIP OF THE
      RENEWAL TERM ........................................................................................ 7

12 1.  Delay In Asserting Their Rights Does Not Extinguish The
13    Holiday Parties' Rights To The Renewal Term ............................ 7

14 2.  The Holiday Parties Are Exclusive Owners Of The Renewal
      Term, Not Co-Authors Or Co-Owners ........................................ 10
15
16 3.  The Renewal Term Cannot Be Owned By Anyone Other
      Than The Holiday Parties ............................................................. 14

17 4.  There Has Been No Plain and Express Repudiation Of The
18    Holiday Parties' Rights To The Renewal Term .......................... 16

19 5.  The Holiday Parties' Claim to Ownership did not Accrue
      Prior to Three Years Before The Commencement of this
20    Suit ................................................................................................... 18

21 C.  THE STATUTE OF LIMITATIONS DOES NOT BAR THE
      HOLIDAY PARTIES' CLAIM FOR CONVERSION ...................... 19

22 V.  CONCLUSION .................................................................................................. 21

23

24

25

26

27

28

YU LESEBERG, P.C.
1845 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

i

1

# TABLE OF AUTHORITIES

2

<u>Federal Cases</u>

3

*Aalmuhammed v. Lee*
    202 F.3d 1227 (9th Cir. 2000) ........................................................ 11

4

*Advance Magazine Publishers, Inc., v. Leach*

5
    466 F. Supp. 2d 628 (D. Md. 2006) ............................................... 15

6

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................ 3

7

8

*Celotex Corp. v. Catrett*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 265 (1986) ....................... 4

9

*De Sylva v. Ballentine*
    351 U.S. 570, 76 S. Ct. 974, 100 L. Ed. 1415 (1956) ....................... 5

10

11

*Doe v. United States*
    419 F.3d 1058 (9th Cir. 2005) ........................................................ 3

12

*Effects Assoc. v. Cohen*
    908 F.2d 555 (9th Cir. 1990) ...................................................... 15

13

14

*Epoch Producing Corp. v. Killiam Shows, Inc.*
    522 F.2d 737 (2d Cir. 1975) ........................................................... 9

15

*Fleming v. Pickard*
    581 F.3d 922 (9th Cir. 2009) ........................................................... 3

16

17

*Fort Knox Music, Inc. v. Baptiste*
    47 F. Supp. 2d 481 (S.D.N.Y. 1999), *rev'd on other grounds*, 203 F.3d 193
    (2d Cir. 2000) ..................................................................... 13, 16

18

19

*Gaiman v. McFarlane*
    360 F.3d 644 (7th Cir. 2004) ...................................................... 17

20

*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*
    716 F.3d 302 (2d Cir. 2013) ............................................................ 2

21

22

*Hampton v. Paramount Pictures Corp.*
    279 F.2d 100 (9th Cir. 1960) ..................................................... 9, 15

23

*Johnson v. Lucent Techs., Inc.*
    653 F.3d 1000 (9th Cir. 2011) ....................................................... 3

24

25

*Jones v. Town of Quartzsite*
    2014 U.S. Dist. LEXIS 23084 (Ariz. Feb. 24, 2014) ........................ 3

26

*Lujan v. Nat'l Wildlife Fed.*
    497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ................. 4

27

28

*Marvel Characters, Inc. v. Simon*
    310 F.3d 280 (2d Cir. 2002) ............................................................ 2

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

ii

*McMunigal v. Bloch*
 2010 U.S. Dist. LEXIS 136086 (N.D. Cal. Dec. 23, 2010) .......................... 15

*Merchant v.* Levy
 92 F.3d 51 (2d Cir. 1996) ................................................................... 11, 12

*Micro Star v. Formgen*
 154 F.3d 1107 (9th Cir. 1998) ............................................................... 15

*Miller Music Corp. v. Charles N. Daniels, Inc.*
 362 U.S. 373, 80 S. Ct. 792, 4 L. Ed. 2d 804 (1960) ........................ 5, 9, 14

*Minder Music, Ltd. v. Mellow Smoke Music Co.*
 1999 U.S. Dist. LEXIS 16001 (S.D.N.Y. Oct. 14, 1999) ................... 10, 13

*Petrella v. MGM*
 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014) ................................. 8, 19, 20

*Polar Bear Prods., Inc. v. Timex Corp.*
 384 F.3d 700 (9th Cir. 2004) .................................................................. 20

*Psihoyos v. John Wiley & Sons, Inc.*
 748 F.3d 120 (2d Cir. 2014) ................................................................. 8, 20

*Richards v. United States*
 369 U.S. 1, 11, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962) .............................. 6

*Ritchie v. Williams*
 395 F.3d 283 (6th Cir. 2005) .................................................................. 18

*Rodrigue v. Rodrigue*
 218 F.3d 432, 436 (5th Cir. 2000) ............................................................ 7

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*
 477 F.3d 383 (6th Cir. 2007), *rev'd on other grounds*, 672 F.3d 434 (6th Cir.
 2012) ...................................................................................................... 17

*Roley v. New World Pictures*
 19 F.3d 479 (9th Cir. 1994) ..................................................... 10, 18, 20

*Santa Rosa v. Combo Records*
 47 F.3d 224 (1st Cir. 2005) ................................................................... 11

*Scorpio Music (Black Scorpio) S.A. v. Willis*
 2013 U.S. Dist. LEXIS 29141 (S.D. Cal. Mar. 4, 2013) ......................... 12

*Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*
 733 F.3d 1251 (9th Cir. 2013) ................................................................ 14

*Silva v. Sunich*
 2006 U.S. Dist. LEXIS 98021 (C.D. Cal. Sept. 6, 2006) ......................... 13

*Stewart v. Abend*
 495 U.S. 207, 110 S. Ct 1750, 109 L. Ed. 2d 184 (1990) .................. 5, 7, 14

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

iii

*Stewart v. Wachowski*
     574 F. Supp. 2d 1074 (C.D. Cal. 2005) ...................................... 12

*Stone v. Williams*
     970 F.2d 1043 (2d Cir. 1992), *cert denied*, 508 U.S. 906, 113 S. Ct. 2331,
     124 L. Ed. 2d 243 (1993) ...................................................8-10, 19

*Tomas v. Gillespie*
     385 F Supp. 2d 240 (S.D.N.Y. 2005) ............................. 10, 11, 12

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*
     429 F.3d 869 (9th Cir. 2005) ................................................. 2

*United States v. Obermeier*
     186 F.2d 243 (2d Cir. 1950) ...................................................... 9

*Welles v. Turner Entm't Co.*
     503 F.3d 728 (9th Cir. 2007) ............................................... 17

*Zuill v. Shanahan*
     80 F.3d 1366 (9th Cir. 1996) ......................... 10, 11, 18, 20

## Federal Statutes

17 U.S.C. § 201(e) ...........................................................7, 15, 20

17 U.S.C. § 204(a) ...............................................................15, 20

17 U.S.C. § 304(a) .................................................................5, 7

17 U.S.C. § 304(a)(1)(C)(ii) .................................................5, 14

17 U.S.C. § 304(a)(3)(A)(ii) .............................................5, 6, 10

17 U.S.C. § 304(a)(3)(B) ...........................................................5

17 U.S.C. § 304(a)(4)(A) ...........................................................6

17 U.S.C. § 507(b) ..............................................................6, 20

## Federal Rules

Fed. R. Civ. P. 12(b)(6)...............................................................3

Fed. R. Civ. P. 8(a).....................................................................4

YU LESEBERG, P.C.
1845 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs Deborah Holiday, Harmony Holiday and Sara Holiday (individually and collectively referred to as the "Holiday Sisters") are the sole owners of the renewal term of copyright in musical compositions written by their father, James Holiday p/k/a Jimmy Holiday ("Jimmy Holiday"), who died in 1987.[1]

Although not the subject of Defendants' motion on the pleadings (the "Motion"), Defendants continue to claim that the musical compositions at issue were "works made for hire" for ASA Music Company ("ASA").  The Second Amended Complaint ("SAC") and the standard exclusive songwriter and composer agreement between Jimmy Holiday and ASA (the "Publishing Agreement") refute that contention because there are numerous material provisions of the Publishing Agreement that are inconsistent with the "work-for-hire-doctrine."  For example, paragraph 3 of the Publishing Agreement, the grant of rights paragraph, provides that "Writer hereby irrevocably *assigns, transfers, sets over, delivers and grants to Publisher*, its successors and assigns each and every and all rights and interests of every kind, nature and description in and to the titles, words and music of any and all original musical compositions . . . *which are now owned* or controlled and *which may, during the term hereof, be owned or controlled*, directly or indirectly by Writer . . . *together with all world-wide copyrights and renewals thereof . . .*"  This grant of rights is exactly the grant found in a standard exclusive songwriter agreement, where the songwriter agrees to grant a publisher 100% of the copyright of each musical composition written during the term of that agreement, rather than a standard "work for hire" agreement, where the publisher is deemed the author.

_____

[1] The Holiday Sisters transferred all of their copyright interest to their wholly owned company, Holiday Legacy IP, LLC ("Legacy") (the Holiday Sisters and Legacy are collectively referred to as the "Holiday Parties").

YU LESEBERG, P.C.
1845 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION ON THE PLEADINGS

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

Additionally, the compositions at issue fail the test developed by both the Ninth and Second Circuits to determine whether a work is a "work made for hire" -- the "instance and expense test," which requires a court "to look to agency law and 'the actual relationship between the parties, rather than the language of their agreements,' in determining the authorship of the work."[2]

As with its prior pleadings, Defendants continue to make this irrelevant argument for the Motion because Defendants recognize that if the compositions are not works for hire for ASA, then Defendants lose:  Defendants are not entitled to any royalties earned during the renewal term copyright of the compositions.

For the Motion, Defendants instead argue that the Holiday Parties claims are barred by the U.S. Copyright Act's ("Copyright Act") three-year statute of limitations.  They are not.  First, Defendants have improperly fused in their analysis the initial term of copyright with the renewal term of copyright, each of which is a separate and distinct property estate.  They have ignored the statutory framework under which copyright is created and vests and, without explicitly arguing it, claim that the renewal term copyright in the compositions somehow transferred from the Holiday Sisters to ASA through the Holiday Sisters' inaction in enforcing their copyrights.  There is no legal basis to support such an argument:  a sole copyright owner does not lose her copyright because she has not asserted her rights.

Second, in determining when a claim accrues for statute of limitation purposes, Defendants are applying the wrong standard.  Although there is no dispute as to the author of the compositions, Defendants argue that the standard applicable

---

[2] *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 316 (2d Cir. 2013) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 291-92 (2d Cir. 2002)).  Resolution of whether a work is a "work made for hire" is a mixed question of law and fact.  *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 877 (9th Cir. 2005).

to co-authors, that a plaintiff's claim accrues on account of creation and is barred three years from "plain and express repudiation" of authorship, should apply to the Holiday Parties. But the Holiday Parties are not co-authors of the compositions or co-owners of the renewal term with anyone, including the Defendants or ASA. Even if the co-author standard did apply, however, there was no "plain and express repudiation" of the Holiday Parties' sole and exclusive ownership interest in the renewal term. The correct standard is that the statute of limitations bars the Holiday Parties, as the sole owners of the renewal term, from bringing only those claims that accrued more than three years before commencement of their suit and does not bar their claim of ownership. The claims in the SAC did not accrue more than three years before commencement of the Holiday Parties' suit. Accordingly, there is nothing in the SAC to be barred by the statute of limitations.

## II.  LEGAL STANDARD FOR A MOTION ON THE PLEADINGS

Judgment on the pleadings is properly granted only when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A motion for judgment on the pleadings is generally evaluated under the same legal standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Jones v. Town of Quartzsite*, 2014 U.S. Dist. LEXIS 23084, at *4-5 (Ariz. Feb. 24, 2014). In deciding a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), all facts pled in a complaint must be taken as true and construed in a light most favorable to the nonmoving party. *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011). A complaint should not be dismissed if a plaintiff has pled enough facts to support a plausible argument that the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007). To defeat a motion to dismiss, the factual allegations must simply be "enough to raise a right to relief above the speculative level . . ." *Id.* at 555. Further, the court must draw all reasonable inferences in the plaintiff's favor, *Doe v. United States*, 419 F.3d 1058, 1062 (9th

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

1   Cir. 2005), and presume that general allegations "embrace those specific facts that
2   are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889,
3   110 S. Ct. 3177, 3189, 111 L. Ed. 2d 695, 716 (1990).  The standard for dismissal
4   incorporates and must be viewed in light of the simplified pleading standards
5   embodied in Fed. R. Civ. P. 8(a).  According to Fed. R. Civ. P. 8(a)(2), a complaint
6   must set forth only "a short and plain statement of the claim showing that the
7   pleader is entitled to relief."  Thus, factual disputes are properly resolved only on
8   summary judgment or at trial, not on a motion to dismiss.  *Celotex Corp. v. Catrett*,
9   477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 265, 276 (1986).

10  ## III.   STATEMENT OF RELEVANT FACTS

11       Jimmy Holiday was a prolific songwriter, having written many popular
12  musical compositions (the "Compositions").  (SAC ¶ 11).  Jimmy Holiday assigned
13  his interest in the copyright in the Compositions to ASA pursuant to the Publishing
14  Agreement, a standard exclusive songwriter agreement, in 1968.  (SAC ¶ 12).

15       Jimmy Holiday and Elizabeth Holiday were married, had one child (Deborah
16  Holiday), separated in April 1977 and divorced in 1983.  (SAC ¶ 13).  Jimmy
17  Holiday and Elizabeth Holiday entered into a property settlement agreement in
18  connection with their divorce (the "Settlement Agreement").  (SAC ¶ 14 and Ex. C).

19       Jimmy Holiday had two additional children, Harmony Holiday and Sara
20  Holiday.  (SAC ¶ 15).  Jimmy Holiday died, unmarried, in 1987.  (SAC ¶ 15).  As
21  part of the probate estate of Jimmy Holiday, the Iowa District Court for Black Hawk
22  County entered an order in 1991, requiring various third parties to pay and distribute
23  royalties from the Compositions directly to Elizabeth Holiday (the "Probate Order").
24  (SAC ¶ 15 and Ex. E).

25       Elizabeth Holiday died in September 2012, and her will purported to leave all
26  of her property to Defendants.  (SAC ¶ 18).

27

28

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

4

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

IV.   **ARGUMENT**

    A.   **THE HOLIDAY PARTIES EXCLUSIVELY OWN THE RENEWAL TERM**

        **1.   The Renewal Term Copyright**

For copyrighted works created prior to January 1, 1978, the copyright term in the United States is split between an original term and a renewal term.  17 U.S.C. § 304(a) and (b); *Stewart v. Abend*, 495 U.S. 207, 217, 110 S. Ct 1750, 109 L. Ed. 2d 184 (1990).  Although the original term and the renewal term are continuous, the renewal right creates a new estate "clear of all rights, interests or licenses granted under the original copyright." *Id.* (internal citation omitted).  The renewal term, however, is only a contingent interest and does not vest until the "renewal period arrives." *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 377, 80 S. Ct. 792, 4 L. Ed. 2d 804 (1960).  If the author dies before the renewal term vests, then the widow/widower and children of the author,[3] if living, are entitled to the renewal term of copyright.  17 U.S.C. § 304(a)(1)(C)(ii); *Stewart*, 495 U.S. at 218 ("Since the author cannot assign his family's renewal rights, [it] takes the form of a compulsory bequest of the copyright to the designated persons." (quoting *De Sylva v. Ballentine*, 351 U.S. 570, 582, 76 S. Ct. 974, 100 L. Ed. 1415 (1956)).  In such case, the widow/widower and children "obtain the renewal copyright free of any claim founded upon an assignment made by the author in his lifetime," *id.* at 219, and may register their interest in the renewal term "***at any time***" during such renewal term.  17 U.S.C. § 304(a)(3)(A)(ii).[4]

_____

[3] The widow/widower and the children of the author succeed to the renewal right as a class. *De Sylva v. Ballentine*, 351 U.S. 570, 580, 76 S. Ct. 974, 100 L. Ed. 1415 (1956).

[4] Such an application is not a condition of the renewal term.  17 U.S.C. § 304(a)(3)(B).

The Compositions are all copyrighted works written by Jimmy Holiday prior to January 1, 1978, and thus have both an original term and a renewal term.  The renewal term for each of the Compositions (the "Renewal Term") commenced *after* Jimmy Holiday died.  Accordingly, the Renewal Term vested in the Holiday Sisters as the children of Jimmy Holiday, as a class, by "compulsory bequest" through operation of the Copyright Act.  Furthermore, the Holiday Sisters obtained the Renewal Term "clear of all rights, interests or licenses granted under the original copyright."[5]

Additionally, the fact that the Holiday Sisters could have registered their interest in the Renewal Term "at any time" during the Renewal Term (17 U.S.C. § 304(a)(3)(A)(ii)) is consistent with the statute of limitations in 17 U.S.C. § 507(b) only if the sole claims time-barred are for damages beyond the three year period, not ownership of the Renewal Term itself.  *See Richards v. United States*, 369 U.S. 1, 11, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that fulfilling our responsibility in interpreting legislation, 'we must . . . look to the provisions of the whole law, and to its object and policy."  (citations omitted));

### 2.    The Renewal Term Never Vested In Jimmy Holiday

Defendants contend that the Probate Order affected the Holiday Sisters' rights in the Renewal Term and placed them on notice that their rights in the Renewal Term were repudiated.  It did not and could not.  The Renewal Term was not part of Jimmy Holiday's estate because he died before it vested.  At the time of Holiday's death, the right to the Renewal Term was only a contingent interest – the Renewal Term had yet to arrive.  Since the Renewal Term was not part of the estate, the

---

[5] Subject to the derivative works exception of 17 U.S.C. § 304(a)(4)(A), which is not relevant to the question of the ownership of the rights to the renewal term.

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

Probate Order, requiring the payment of royalties to Elizabeth Holiday, could only apply to the royalties earned during the initial term, not the Renewal Term.

The same reasoning applies to the Settlement Agreement.  At the time of the dissolution of the marriage between Jimmy Holiday and Elizabeth Holiday, the Renewal Term was only a contingent interest.  The Settlement Agreement assigned no copyright interest to Elizabeth Holiday.  Rather, it only assigned to Elizabeth Holiday a share of the royalties Jimmy Holiday had been receiving and had the right to continue receiving (SAC Ex. C, p. 3:23-28).  Once the Renewal Term arrived, neither Jimmy Holiday nor his estate had any right to either the Renewal Term or royalties earned in connection with the Renewal Term.  Accordingly, the Holiday Sisters obtained the Renewal Term *free of any claim* founded upon an assignment made by Jimmy Holiday in his lifetime, including, without limitation, the Publishing Agreement or the Settlement Agreement.  *Stewart*, 495 U.S. at 219.

Furthermore, a state court cannot affect the vesting of a copyright interest. *Rodrigue v. Rodrigue*, 218 F.3d 432, 436 (5th Cir. 2000) (an author's initial vesting of a copyright is governed by the Copyright Act, unaffected by a state's community property law).  Neither the family court with respect to the Settlement Agreement nor the probate court with respect to the Probate Order has the power to divest from the Holiday Sisters the rights to the Renewal Term.  17 U.S.C. § 304(a) (statutory vesting of the renewal term); 17 U.S.C. § 201(e) (copyright ownership may not be transferred "by any governmental body or other official," except under the Bankruptcy Code).

**B.** **THE STATUTE OF LIMITATIONS DOES NOT BAR THE HOLIDAY PARTIES' CLAIM TO OWNERSHIP OF THE RENEWAL TERM**

**1.** **Delay In Asserting Their Rights Does Not Extinguish The Holiday Parties' Rights To The Renewal Term**

A copyright claim arises when an infringing act occurs. *Petrella v. MGM*,

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

134 S. Ct. 1962, 1969, 188 L. Ed. 2d 979 (2014).  Each infringing act starts a new limitations period.  *Id.*  "Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e. , acts within the three-year window), but untimely with respect to prior acts of the same or similar kind."  *Id.* at 1970 (quoting 3 Nimmer on Copyright § 12.05[B][i][b]).

Defendants contend that the statute of limitation bars the Holiday Sisters from asserting their rights in the Renewal Term.  Such contention is false.  The Second Circuit addressed this point on facts less favorable to the Holiday Parties' claims in *Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992), *cert denied*, 508 U.S. 906, 113 S. Ct. 2331, 124 L. Ed. 2d 243 (1993), where the plaintiff commenced an action seeking a declaration that she was Hank Williams, Sr.'s child, and was, therefore, entitled to a share of the copyright renewals for his extensive repertory of songs.[6] The *Stone* court held that each time the holder of a copyright renewal is deprived of his or her statutory entitlement, for example, by non-payment of royalties, a distinct harm is done to the owner's property interest.  "Stone's failure to seek relief promptly for violations of her entitlement to renewal copyrights does not make defendants immune from suit for later violations."  *Id.* at 1050.[7]

---

[6] The *Stone* plaintiff's claim was against other members of the statutory class entitled to the renewal term for a share of that renewal term, whereas the Holiday Parties claims are against strangers to the rights to the renewal term, who did not acquire rights through statutory bequest under operation of the Copyright Act.

[7] The United States Supreme Court recently affirmed the reasoning of *Stone* in *Petrella*, 134 S. Ct. at 1969 ("Each act of infringement is a distinct harm giving rise to an independent claim for relief." (quoting *Stone*, 970 F.2d at 1049)); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123 (2d Cir. 2014) (Validating the discovery rule set out in *Stone* and stating "[w]e reject [defendant's] suggestion that we apply different accrual rules for ownership and infringement claims, both of

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

The defendants insisted that "because plaintiff did not seek a judicial determination that she was an owner of the copyright renewals within three years of 1979 [when plaintiff was told she might be William's heir and could bring suit] she cannot now do so and then assert a cause of action based on such ownership." *Id*. The court rejected this approach. "Defendants' contention ignores the distinction between what must be done to give rise to certain rights and what needs to be done to vindicate those rights." *Id*. (citing *United States v. Obermeier*, 186 F.2d 243, 254-55 (2d Cir. 1950) (except in the rare instance when the statute creating the substantive right makes the limitation period a part of, or qualification on, the right itself, limitation statute establishes no unalterable legal relationships)). As with a copyright itself, a copyright renewal is a creature of statute. *See Miller Music*, 362 U.S. at 375. "One's entitlement to a copyright or a renewal is therefore determined by statute, ***and the statute nowhere suggests that one loses a right to renewals merely by delaying assertion of that right***." *Stone*, 970 F.2d at 1051 (citing *Epoch Producing Corp. v. Killiam Shows, Inc*., 522 F.2d 737, 743 (2d Cir. 1975) (emphasis added)); *cf. Hampton v. Paramount Pictures Corp*., 279 F.2d 100, 104 (9th Cir. 1960) (mere lack of action does not amount to abandonment of copyright).

The court concluded that in order for plaintiff to be entitled to a share of the copyright renewal term, she need only be a "child" of the author. "One does not lose such status because of delay in asking a court to declare it." *Stone*, 970 F.2d at 1051. Consequently, "merely because Stone could have brought suit in 1979 does not prevent her suit (only some of the relief sought) in 1985. To hold otherwise would ignore the long established rule that statutes of limitations bar remedies, not the assertion of rights. Thus, Stone's suit is timely insofar as relief is sought for defendants' failure to remit to her a proportionate share of royalties received within

which are governed by 17 U.S.C. § 507(b).")

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION ON THE PLEADINGS

three years of suit." *Id.* at 1051 (internal citations omitted).[8]

This position is further supported by the Copyright Act itself. The Holiday Sisters have the right to register their interest in the Renewal Term "at any time" during such renewal term. 17 U.S.C. § 304(a)(3)(A)(ii). There is no provision in the Copyright Act that suggests that the holder of the rights to the renewal term loses those ownership rights if they do not register them or take some affirmative action within a certain period of time. At most, any delay by the Holiday Parties has caused them to waive royalties received more than three years prior to the commencement of this suit.

## 2. The Holiday Parties Are Exclusive Owners Of The Renewal Term, Not Co-Authors Or Co-Owners

In the Motion, Defendants attempt to equate a claim for co-authorship/co-ownership with the Holiday Parties' ability to assert their rights to the Renewal Term, and support their position by citing *Zuill v. Shanahan,* 80 F.3d 1366 (9th Cir. 1996). *However, the Holiday Parties own the Renewal Term exclusively and are not co-authors or co-owners with anyone, including the Defendants or ASA.* The plaintiffs in *Zuill* claimed to be co-authors of a joint work, along with defendant, so that the copyright vested in them as well as the defendant as "co-owners." The court concluded that the plaintiffs' claim for co-authorship accrued only once "when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." *Zuill,* 80 F.3d at 1369 (9th Cir.

---

[8] Defendants fail to mention *Stone,* despite it being the case most analogous to the facts of this case and despite it being prominently cited in at least four of the cases cited by Defendants, *Roley v. New World Pictures*, 19 F.3d 479, 481 (9th Cir. 1994), *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996), *Tomas v. Gillespie*, 385 F. Supp. 2d 240, 243-246 (S.D.N.Y. 2005) and *Minder Music, Ltd. v. Mellow Smoke Music Co.*, 1999 U.S. Dist. LEXIS 16001, at *5 (S.D.N.Y. Oct. 14 1999) (all discussed below).

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION ON THE PLEADINGS

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

1996); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000) (Where "*creation* rather than infringement is the gravamen of an *authorship claim*, the claim accrues on account of creation, not subsequent infringement, and is barred three years from 'plain and express repudiation' *of authorship*."  (emphasis added)). Of note, the *Zuill* court accepted how the court in *Stone* applied the statute of limitations to the *Stone* plaintiff's claim for co-ownership of the renewal term, and distinguished the *Zuill* plaintiffs' claim for co-creation.  "We have accepted the proposition, applied in *Stone*, that 'the statute bars recovery on any claim for damages that accrued more than three years before commencement of suit,' neither barring infringing acts within the limitations period, nor reaching back to infringements prior to the statutory period.  That proposition has no application to a co-ownership claim, as opposed to an infringement claim."  *Zuill*, 80 F.3d at 1370 (internal citations omitted).

Defendants citation to *Santa Rosa v. Combo Records*, 47 F.3d 224 (1st Cir. 2005), another co-authorship case, does not change this analysis.  "[N]o . . . uncertainty exists as to co-ownership rights based on co-authorship.  A co-author knows that he or she jointly created a work from the moment of its creation."  *Id.* at 228 (quoting *Merchant v.* Levy, 92 F.3d 51, 56 (2d Cir. 1996)).  The *Santa Rosa* court held that the plaintiff's co-authorship claim accrued "as soon as [the plaintiff] finished recording each album."  *Id.*  Here, there is no issue as to co-authorship, and all of the cases cited by Defendants simply do not apply.

Additionally, Defendants cite *Tomas v. Gillespie*, 385 F Supp. 2d 240 (S.D.N.Y. 2005) for the proposition that the statute of limitations bars a claim, such as the Holiday Parties, for declaration that they are entitled to the Renewal Term.  It does not.  The plaintiff in *Tomas,* the illegitimate child of Dizzy Gillespie, was asserting her right to share the renewal term of copyright in musical compositions written by her late father with Dizzy's widow.  "The primary remedy she seeks is a declaration that she is Gillespie's natural child and a co-owner of the renewal

copyrights." *Id.* at 246.  The court held that because the plaintiff's action began to accrue upon defendants' earlier "plain and express repudiation" of plaintiff's claim to both paternity and co-ownership, the entire action was time-barred.  *Id.*[9]

Unlike the plaintiffs in *Zuill*, *Aalmuhammed* or *Santa Rosa*, the Holiday Parties' claims are not for co-ownership based upon joint creation, nor is there any question or dispute that Jimmy Holiday wrote the Compositions.  Furthermore, unlike the plaintiff in *Tomas*, the Holiday Parties' claims are not for paternity or for co-ownership of the renewal term.  In addition to not being relevant to the facts surrounding the Holiday Parties' rights to the Renewal Term, *Tomas* was also wrongly decided and not in accordance with Second Circuit precedent of *Stone* and *Merchant*, 92 F.3d at 56 (holding, like *Zuill*, that plaintiffs claims to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights).  The Holiday Parties are the sole and exclusive owners of the Renewal Term by operation of the Copyright Act and are not barred from asserting their rights to it against the world within the three-year period prior to the commencement of this action.[10]

---

[9] After extensive analysis, Nimmer concluded that *Tomas* was wrongly decided.  "[E]ven thought a party knows the factual basis of a co-ownership claim, courts should not deem the statute of limitations to start running until the claim has matured to the point of being legally cognizable."  1-12 Nimmer on Copyright § 12.05[C][1].  *See also Scorpio Music (Black Scorpio) S.A. v. Willis*, 2013 U.S. Dist. LEXIS 29141, at *10 n.2 (S.D. Cal. Mar. 4, 2013) (acknowledging Nimmer's perspective, but distinguishing the facts of *Tomas* because the plaintiff (who was asserting that one of the credited co-writers was not, in fact, a co-writer) was a co-author, like the plaintiffs in *Ziull*, who knew about the co-writer's claim).

[10] Defendants also cite *Stewart v. Wachowski*, 574 F. Supp. 2d 1074 (C.D. Cal. 2005), which is inapposite to the case at bar.  In *Wachowski*, the court dismissed plaintiff's copyright infringement action because the plaintiff could not show that defendant had access to plaintiff's work or that the works were strikingly similar (plaintiff had not proffered the works to the court for comparison).

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

Courts have similarly applied the logic in *Zuill* to claims where an author was claiming not that he co-wrote a work with another but that he was the sole author where another claimed to be a co-author.  For example, in *Fort Knox Music, Inc. v. Baptiste*, 47 F. Supp. 2d 481 (S.D.N.Y. 1999), *rev'd on other grounds*, 203 F.3d 193 (2d Cir. 2000), defendant claimed to be the sole author of the composition "Sea of Love," but knew more than three years prior to the commencement of his action that plaintiffs were crediting another writer as co-author of this composition.  "Any action by [defendant] challenging plaintiffs' copyright rights in 'Sea of Love' on the basis of his claimed sole authorship of the composition is thus necessarily time barred."  *Id.* at 484.  Similarly, in *Silva v. Sunich*, 2006 U.S. Dist. LEXIS 98021 (C.D. Cal. Sept. 6, 2006), the plaintiff claimed to have been the sole creator of Julius, the famous monkey design of the clothier Paul Frank.  The court held that the plaintiff and the defendant were co-authors and therefore co-owners of the copyright in Julius.  *Id.* at *14; however, because the defendants had repudiated plaintiff's claim of co-ownership over three years prior to the filing of the complaint, plaintiff's claim of ownership was time barred.  *Id.* at *22-23.  Unlike the creators in *Fort Knox* or in *Silva*, however, the authorship of the Compositions are not in dispute, and, additionally, the Holiday Parties are not co-owners of the Renewal Term with anyone.

Similarly, the court in *Minder Music Ltd. v. Mellow Smoke Music Co.*, 1999 U.S. Dist. LEXIS 16001 (S.D.N.Y. Oct. 14, 1999), held that the plaintiff, who undisputedly owned 50% of the copyrights through a purchase agreement listing defendant as the co-owner, was time barred from asserting a claim over the other 50%, owned by defendants, because plaintiff waited over seven years after purchasing the undisputed portion before bringing suit.

The Ninth Circuit has acknowledged that there is no difference between a plaintiff claiming to be a co-author with another writer who has claimed sole authorship, and a plaintiff claiming to be the sole author where another writer has

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION ON THE PLEADINGS

claimed to be a co-author. *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1255-56 (9th Cir. 2013) ("If A cannot be heard to claim belatedly that he co-authored a work with B twenty years ago, which would result in A owning 50% of the copyright, then all the more so C must be barred from belatedly claiming that she solely authored a work on which D has been claiming authorship credit for twenty years, which would result in C owning 100% of the copyright." (quoting 3 Nimmer on Copyright § 12.05[C][2])).[11]

But none of these cases cited by Defendants apply here – the Holiday Parties did not derive their rights to the Renewal Term from co-authorship, co-ownership or from a contract. The Holiday Parties derived their rights by operation of the Copyright Act, and those rights cannot be divested from the Holiday Parties as the result of their delay in enforcing them.

### 3. The Renewal Term Cannot Be Owned By Anyone Other Than The Holiday Parties

Defendants' argument in the Motion that the Holiday Parties are time-barred from asserting their ownership of the Renewal Term begs the question: If the Holiday Parties do not own the Renewal Term, then who does? The Initial Term and the Renewal Term are two distinct property interests. *Stewart*, 495 U.S. at 217. The Renewal Term was only a contingent interest that did not vest until the Renewal Term arrived. *Miller Music*, 362 U.S. at 377. Jimmy Holiday died before the Renewal Term arrived, and the Copyright Act "compulsorily bequeathed" the Renewal Term to the Holiday Sisters as the children of Jimmy Holiday (there was no widow). 17 U.S.C. § 304(a)(1)(C)(ii); *Stewart*, 495 U.S. at 218. The Holiday

---

[11] Similar to a claim between two co-writers, the court in *Seven Arts* held that a disputed claim of ownership between two contracting parties in close relationship accrues when one of the parties clearly and expressly repudiates the other's ownership interest. *Seven Arts*, 733 F.3d at 1258.

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

Sisters transferred the Renewal Term to Legacy pursuant to a written instrument. (SAC ¶ 25). Legacy has not transferred the Renewal Term to any other party.

A transfer of copyright ownership is not valid unless the copyright owner executes a signed writing, transferring the ownership. 17 U.S.C. § 204(a); *Effects Assoc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so."). Furthermore, copyright ownership may not be transferred "by any governmental body or other official," except under the Bankruptcy Code. 17 U.S.C. § 201(e); *McMunigal v. Bloch*, 2010 U.S. Dist. LEXIS 136086, at *18 (N.D. Cal. Dec. 23, 2010) (a court may not "partition a jointly held copyright in the absence of a signed transfer under Section 204(a) and in contravention to Section 201(e)."); *see also Advance Magazine Publishers, Inc., v. Leach*, 466 F. Supp. 2d 628, 636 (D. Md. 2006) ("Defendant's claim to have effected the transfer [of copyright] by operation of law through adverse possession amounts to a claim for an involuntary transfer of rights, which is barred by 17 U.S.C. § 201(e).").

Additionally, while the rights gained under the Copyright Act may be abandoned, abandonment "must be manifest by some overt act indicative of a purpose to surrender the rights and allow the public to copy." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) ("Evidence of such an overt act is here totally lacking. There was at most lack of action."); *accord Micro Star v. Formgen*, 154 F.3d 1107, 1114 (9th Cir. 1998). There is no evidence that the Holiday Parties abandoned the Renewal Term.

Therefore, since Legacy has not transferred the Renewal Term to anyone, did not abandon it and the Renewal Term can't be involuntarily transferred, Legacy remains the sole owner of the Renewal Term. There is simply no other party that has the right to assert ownership, in whole or in part, to the Renewal Term. This is in contrast to all of the plaintiffs in each of the cases cited by Defendants (*Zuill,*

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

15

*Santa Rosa, Tomas, Fort Knox, Minder Music and Silva*), where the barring of the plaintiff's claim kept the copyright in the name of a co-owner defendant who had a legitimate basis for, at a minimum, part of the copyright.

### 4.   There Has Been No Plain and Express Repudiation Of The Holiday Parties' Rights To The Renewal Term

Even if the standard for co-authors as outlined in *Zuill*, that a claim for co-authorship accrued only once when plain and express repudiation of co-ownership is communicated to the claimant and is barred three years from the time of repudiation, applied to the Holiday Parties claim of sole authorship derived from compulsory bequest by operation of the Copyright Act (which it does not), no one communicated to the Holiday Parties plain and express repudiation of ownership until, at the earliest, April 29, 2013, the date of correspondence from Defendants' counsel (SAC Ex. H).

Defendants contend that the Probate Order put the Holiday Parties on notice that their ownership claim to the royalties Elizabeth Holiday was receiving had been repudiated.  As discussed above, the Renewal Term (and the royalties earned in connection therewith) was not part of Jimmy Holiday's estate.  Since the Renewal Term for each of the Compositions did not commence until *after* Jimmy Holiday's death, the Probate Order could only address the division of royalties earned during the Initial Term.  Moreover, the Probate Order did not even purport to address the Renewal Term, nor could it, given the timing of events:  the Renewal Term for each of the Compositions had not commenced prior to Jimmy Holiday's death.  Thus, the Probate Order was consistent with ASA continuing to own the copyrights for the Initial Term and for the distribution of 50% of the writer royalties to Elizabeth Holiday.  Accordingly, there is no language in the Probate Order that could have put the Holiday Parties on notice that their ownership claim to the Renewal Term had

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION ON THE PLEADINGS

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

been repudiated.[12]  This is further supported by the fact that the Settlement Agreement treated as community property only the royalties Jimmy Holiday had been receiving and had the right to continue receiving (SAC Ex. C, p. 3:23-28). Since neither Jimmy Holiday nor his estate had or would ever receive any royalties in connection with the Renewal Term, the Probate Order simply had nothing to do with the Renewal Term and therefore didn't place anyone on notice of anything in connection with the Renewal Term.

Furthermore, knowledge that another party is making a claim to ownership or is receiving royalties is not enough to constitute plain and express repudiation of ownership in order to start the clock running for statute of limitation purposes in a copyright claim. *Compare Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007), *rev'd on other grounds*, 672 F.3d 434 (6th Cir. 2012) (Defendant's actions, including filing the application of renewal, openly and exclusively licensing the compositions during the renewal term, and paying various parties royalties for defendant's exploitation of the renewal copyrights did not constitute plain and express repudiation of ownership); *Gaiman v. McFarlane*, 360 F.3d 644, 653-55 (7th Cir. 2004) (filing of copyright registration and sending a demand letter related to the right to receive royalties were not enough to constitute plain and express repudiation of ownership), *Welles v. Turner Entm't Co.*, 503 F.3d 728, 734 (9th Cir. 2007) (correspondence informing plaintiff that defendants were

---

[12] Defendants concede that all of the Holiday Sisters were minors at the time of the Probate Order.  (Motion, p. 17:1-4).  Defendants, as the purported heirs to Elizabeth Holiday, are estopped from arguing that the Holiday Sisters were on notice that their rights were being repudiated because Elizabeth Holiday, as the mother of the oldest daughter Deborah, would have been the responsible party at the time of the Probate Order to ensure that Deborah's rights to the Renewal Term were properly represented and protected.  Elizabeth Holiday (and her purported heirs) cannot benefit now from the clear conflict of interest.

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

distributing *Citizen Kane* on home video "is not the plain and express repudiation of copyright ownership that our case law requires for the statute of limitations on a copyright ownership claim to begin running"); *with Zuill*, 80 F.3d at 1368 (finding plain and express repudiation where defendant sent to plaintiffs an agreement, providing that defendant was the sole author of the works); *Ritchie v. Williams*, 395 F.3d 283, 288 (6th Cir. 2005) (finding plain and express repudiation where plaintiff had expressly told the defendants, in a letter, that defendant had exclusive ownership of the compositions that he had written).  Defendants can point to no notice to the Holiday Parties of plain and express repudiation of ownership.[13]  Accordingly, even under the rule established in *Ziull* for co-authors, the statute of limitations does not bar the Holiday Parties' claim for ownership.

### 5.   The Holiday Parties' Claim to Ownership did not Accrue Prior to Three Years Before The Commencement of this Suit

Ignoring all of the cases cited above, Defendants next argue that even if the rule set forth in *Zuill* for co-writers applied but there was no plain and express repudiation, then the Holiday Parties' claim for ownership of the Renewal Term is time-barred because the Holiday Sisters knew that Elizabeth Holiday was receiving royalties since 1991.  Putting aside the issue about royalties earned in connection with the Initial Term and royalties earned in connection with the Renewal Term (discussed above), the statute of limitations would only bar claims to royalties that were earned more than three years prior to the commencement of the suit.  *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir. 1994) (the statute of limitations "does not provide for a waiver of infringing acts within the limitation period if

---

[13]At best, Defendants can point to their counsel's April 29, 2013 letter to counsel for the Holiday Parties (SAC Ex. H) as refuting the Holiday Parties' ownership claim to the Renewal Term, which letter was sent less than one year prior to the date the complaint was filed, well within the three year statute of limitations.

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

earlier infringements were discovered and not sued upon, nor does it provide for any reach back if an act of infringement occurs within the statutory period."); *Stone*, 970 F.2d at 1051 ("merely because Stone could have brought suit in 1979 does not prevent her suit (only some of the relief sought) in 1985.  To hold otherwise would ignore the long established rule that statutes of limitations bar remedies, not the assertion of rights.").

As a last ditch effort to try to time-bar the Holiday Parties' claims, Defendants cite to a March 14, 2014 letter to Defendants' probate counsel (SAC Ex. F), arguing that because the letter states that the Holiday Parties were entitled to terminate the royalties paid to Elizabeth Holiday since at least 1998, all of the Holiday Parties' claims must have accrued at that time.  Such argument is false. First, as discussed above, knowing that one could have brought suit earlier only bars claims for royalties that accrued more than three years ago.  Second, *nowhere does the March 14, 2014 letter indicate that the Holiday Parties knew in 1998 that they had a claim.*  In order for the Holiday Parties' claims to begin accruing, they needed to discover, or with due diligence should have discovered, the injury that forms the basis for their claim.  *Petrella*, 134 S. Ct. at 1989 and n.4.  But the Holiday Parties did not discover that they had a claim until after Elizabeth Holiday's death (SAC ¶¶ 23-24), and Defendants fail to cite any evidence that the Holiday Parties failed to exercise due diligence to discover earlier the injury that forms the basis for their claim.  Accordingly, the Holiday Parties are probably entitled to assert their claim to royalties *beyond* the three-year period prior to the commencement of this suit, but since their claim is limited to such three-year period, this question is presently moot.

For all of the reasons stated above, the statute of limitations does not bar the Holiday Parties' ownership claim to the Renewal Period.

## C.   THE STATUTE OF LIMITATIONS DOES NOT BAR THE HOLIDAY PARTIES' CLAIM FOR CONVERSION

The Holiday Parties' claim for conversion is not time-barred for the same

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

1   reasons as their declaratory relief claim is not time-barred:  The Holiday Parties own

2   the Renewal Term exclusively pursuant to a compulsory bequest through operation

3   of the Copyright Act.  The Copyright Act prevents the involuntary transfer of the

4   Renewal Term (17 U.S.C. § 201(e)) and invalidates any transfer of the Renewal

5   Term without a writing signed by the Holiday Parties (17 U.S.C. § 204(a)).

6          Other than with respect to co-writer claims or claims involving a disputed

7   contract between two parties in close relationship, the accrual rules for ownership

8   claims and infringement claims are identical.  *Psihoyos*, 748 F.3d at 124 ("We reject

9   [defendant's] suggestion that we apply different accrual rules for ownership and

10  infringement claims, both of which are governed by 17 U.S.C. § 507(b).  In doing

11  so, we join every Circuit to have considered the issue of claim accrual in the context

12  of infringement claims."  (citing, among others, *Polar Bear Prods., Inc. v. Timex

13  Corp.*, 384 F.3d 700, 705-707 (9th Cir. 2004)).  The Holiday Parties' claim to

14  ownership of the Renewal Term is neither one involving co-writers like in *Zuill* or

15  disputed contracting parties in close relation like in *Seven Arts*, and even if the *Zuill*

16  standard applied, there was no plain and express repudiation of the Holiday Parties'

17  claim to ownership of the Renewal Term.

18         The fact that the Holiday Parties *could* have brought suit earlier does not

19  time-bar them from making their claims now, at least with respect to royalties

20  earned in the three year period prior to the commencement of this suit.  That is

21  potentially a defense of laches, which the United States Supreme Court has recently

22  struck down.  *Petrella*, 134 S. Ct. at 1978-79 (allowing plaintiff, the owner of the

23  renewal term to the screenplay *Raging Bull*, to sue for copyright infringement

24  eighteen years after the commencement of the renewal term, even though plaintiff

25  knew of the infringement at least nine years earlier).

26         The only damages that are time-barred are those that relate to acts occurring

27  more than three years prior to the commencement of this suit.  *Id.* at 1969; *Zuill*, 80

28  F.3d at 1370 ("We have accepted the proposition, applied in *Stone*, that 'the statute

bars recovery on any claim for damages that accrued more than three years before commencement of suit,' neither barring infringing acts within the limitations period, nor reaching back to infringements prior to the statutory period."); *Roley,* 19 F.3d at 481 ("the statute bars recovery on any claim for damages that accrued more than three years before commencement of suit").  Like the plaintiff in *Petrella*, the Holiday Parties are seeking damages only for acts that occurred within three years prior to the commencement of their suit.  Accordingly, The Holiday Parties claim for conversion is not barred by the statute of limitations.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny the Motion, or in the alternative grant leave to amend the SAC to allege sufficient further facts.

DATED: October 28, 2014                   YU LESEBERG

By:    _____/s/_____

Robert E. Allen
Attorneys for Plaintiffs
HOLIDAY LEGACY IP, LLC,
DEBORAH HOLIDAY, HARMONY
HOLIDAY and SARA HOLIDAY

YU LESEBERG, P.C.
1645 N. VINE, PENTHOUSE 1002
LOS ANGELES, CALIFORNIA 90028
TELEPHONE: 310-286-7667

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION ON THE PLEADINGS